UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JEFFERY ALLAN HATFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-011-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Jeffery Allan Hatfield ("Hatfield" or "claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 13] Hatfield argues that the administrative law judge ("ALJ") assigned to his case erred by denying his claims for disability income benefits ("DIB") and supplemental social security income ("SSI"). More specifically, he asserts that the ALJ did not evaluate his subjective complaints properly and that the ALJ's decision is not supported by substantial evidence. Hatfield asks the Court to direct the Commissioner to award him benefits or, alternatively, to remand this matter to the Commissioner for further consideration. The Commissioner contends that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence.

The Commissioner's motion will be granted and the relief requested by Hatfield will be denied for the reasons that follow.

## I.

Hatfield filed concurrent applications in March 2015 for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act. [Administrative Transcript, "Tr.," 325, 334] He alleges a disability beginning July 1, 2014. *Id*. The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. [Tr. 182, 196, 207, 221] Hatfield then pursued and exhausted his administrative remedies. His case is now ripe for this Court's review under 42 U.S.C. §§ 405(g), 1383(c)(3).

Hatfield was 46-years-old at the time of the ALJ's decision. [Tr. 108] He has a high school education and previously worked in apartment maintenance. [Tr. 109] Hatfield's job duties included painting, roofing, mowing lawns, and air conditioning work. *Id*. He reported in his application for benefits that he is unable to work due to major depression anxiety disorder, right knee pain, and testicular hernia problems. [Tr. 183] Hatfield claims that he also suffers from high blood pressure and lower back problems. [Tr. 111-120]

The Claimant's pertinent medical history is summarized as follows:

Hatfield was admitted to Harlan Appalachian Regional Healthcare ("ARH") in October 2014, with complaints of anxiety, depression, and suicidal thinking. [Tr. 508] He was discharged several days later with a diagnosis of adjustment disorder with mixed features of anxiety and depression. *Id*. Hatfield was seen by Dr. Raza a week after his discharge and was prescribed Celexa and Atarax with instructions to follow up in one month. [Tr. 178-180]

Hatfield once again was admitted into the Psychiatric Unit at ARH in March 2015, based upon claims of anxiety and depression. [Tr. 559] A detox was completed and his medication adjusted, resulting in his depression and anxiety resolving. *Id*. He was discharged

several days later with a diagnosis of substance-induced mood disorder and opioid dependency, with a recommendation to follow-up with a residential drug rehab program. *Id*. Hatfield was seen regularly by Dr. Raza throughout 2016 for issues involving anxiety and depression. Raza instructed Hatfield to take his medication regularly. [*See* Tr. 161, 163, 165, 167.]

Hatfield was treated for high blood pressure, back and testicular pain by APRN Lisa Bennett during the relevant period. In July 2014, Bennett diagnosed him with epididymitides after he presented with testicular pain he allegedly experienced occasionally for years. [Tr. 488-89] Dr. Kilstein saw Hatfield for severe testicular pain in June 2015 and recommended hydrocelectomy. [Tr. 633] He presented to Bennett with high blood pressure prior to being cleared for surgery and started on Lisinopril. [Tr. 628-29] Hydrocelectomy surgery with Dr. Kilstein was scheduled for July 8, 2015, but did not occur due to confusion over the location of the alleged pain. [Tr. 635] A November 2015 x-ray revealed a normal lumbar spine. [Tr. 659]

Hatfield went to the Tri City Medical Center in February 2016, requesting medication for chronic pain in his lower back and testicles. [Tr. 736] He was diagnosed with low back pain, but a subsequent MRI was normal. [Tr. 737, 716, 734] Hatfield was advised at the time that APRN Pam Sheffield would no longer prescribe pain medications for him. [Tr. 737] Thereafter, Hatfield began regular treatment with Dr. Sai P. Gutti, at the Pain Management Center. He underwent a right ilioinguinal nerve block on two occasions in 2016 which, according to Hatfield, reduced his level of pain. [*See* Tr. 813, 814, 818, 819.]

Bennett saw Hatfield in May 2016 for complaints of left knee pain. [Tr. 799] An MRI revealed a complex tear involving the posterior horn of the lateral meniscus. [Tr. 783] Hatfield

- 3 -

was evaluated by Bennett again in November 2016 for complaints of dizziness. [Tr. 150] She diagnosed him with otitis and refilled his prescription for blood pressure medication. [Tr. 151] Hatfield asked Bennett to provide a medical statement for his disability application, but she recommended that he undergo a functional capacity examination ("FCE") instead. *Id.* Physical therapist Shawn Stepp reported being unable to complete the FCE in December 2016 due to Hatfield's elevated blood pressure. [Tr. 824]

State agency psychologist Ed Ross, Ph.D., reviewed Hatfield's file in June 2015 and concluded that Hatfield was not significantly limited in his ability to understand and carry out simple and detailed instructions. [Tr. 190] Specifically, Ross found that Hatfield could understand and recall simple and detailed work procedures, complete routine mental aspects and make associated work-related decisions, without special supervision, and tolerate coworkers and accept supervision in a generally object focused context with infrequent and casual contacts as well as with only occasional contact with the general public. [Tr. 193] State agency psychologist Mary K. Thompson, Ph.D., reached similar conclusions in September 2015. [Tr. 216-218]

Hatfield testified during the administrative hearing before the ALJ that he has not been able to work due to his anxiety and depression, high blood pressure, and lower back and testicular problems. [Tr. 111] He claimed that he uses his pain medication and a heating pad to relieve his pain. [Tr. 116] He testified that he walks around the house a little bit, but only 25 yards at most. *Id.* Hatfield also testified that he checks his blood pressure regularly and it is normally high, even while taking his medication. [Tr. 117] Hatfield stated that he is mentally depressed and has a hard time concentrating. [Tr. 119]

The ALJ concluded that Hatfield had severe impairments of depression and anxiety. [Tr. 87] However, after considering the evidence of record and Hatfield's testimony during the administrative hearing, the ALJ determined that he had the RFC to perform a full range of work at all exertional levels as defined in 20 C.F.R. §§ 404.1567 and 416.967, with the nonexertional limitations including being "limited to simple instructions and tasks in object-focused settings with infrequent casual supervision, coworker interactions, and occasional public contact." [Tr. 90] Although Hatfield could not perform any of his past work, the ALJ determined there were jobs existing in significant numbers in the national economy that he could perform. [Tr. 92] The ALJ concluded that Hatfield had not been under a disability from July 1, 2014, through the date of his decision. [Tr. 93]

## II.

A "disability" is defined under the Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruise v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). In determining whether a claimant is "disabled" and entitled to supplemental income, he must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot

make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work under the fifth step of the analysis. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.**

Hatfield argues generally that the ALJ failed to properly evaluate his subjective complaints of pain and mental limitations.[1] [Record No. 11-1, p. 16] When a plaintiff does not offer particularized arguments, the Court does not formulate arguments on his behalf or engage in an "open-ended review of the entirety of the administrative record. . . ." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Instead, the Court's inquiry is limited to the particular points the plaintiff appears to raise in his appeal. *Id. See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ([I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

ALJs utilize a two-prong test for evaluating a claimant's subjective allegations. *See* 20 C.F.R. §§ 404.1529; 416.929; SSR 16-3p (Oct. 25, 2017). First, the ALJ must consider whether there is an underlying medically determinable impairment that could reasonably be expected to cause an individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304 at *3. Once an underlying impairment is established, the ALJ evaluates the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *Id.*

A medically determinable impairment is one that results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable medical evidence. SSR 96-4p (July 2, 1996), 1996 WL 374187, at *1. The regulations require

---

[1] The claimant also contends that the ALJ failed to consider "diagnostic testing, as well as the consultative exam and the exams from Dr. Spangler." [Tr. 11-1, p. 16] He has not provided a citation to a specific portion of the record that the ALJ failed to consider and there does not appear to be a consultative exam or any records from Dr. Spangler in the transcript.

evidence from acceptable medical sources; the existence of an impairment cannot be established on the basis of symptoms alone. *Id.* It is unclear that the ALJ deemed Hatfield's back pain and hypertension medically determinable impairments. Instead, he merely characterized them as non-severe conditions that had been considered. [Tr. 88] The ALJ noted that an x-ray and MRI of Hatfield's lumbar spine were normal and that Hatfield had "normal gait and station." [Tr. 88, 728] He also noted that Hatfield had been treated with Lisinopril and had normal blood pressure readings over the longitudinal record.[2]

The record is devoid of objective evidence indicating that Hatfield had an impairment associated with his back. An MRI performed in February 2016 was normal, revealing that the vertebral bodies were normal in height and alignment and no spinal stenosis was identified. [Tr. 734] That same month, his primary care provider advised him that she would no longer prescribe him any medication for pain. [Tr. 735] Hatfield began seeing a pain management specialist for groin pain, but there is no indication (and the plaintiff has not argued) that this was a medically determinable impairment. While Hatfield was treated for hypertension, his primary care notes indicate that it was controlled by medication. [Tr. 73-75, 88]

Assuming *arguendo* that Hatfield's back pain and hypertension were medically determinable impairments, the ALJ's analysis was sufficient under the two-step process. Once the claimant shows that he has a medically determinable impairment, the ALJ considers a variety of factors to evaluate the intensity and persistence of the symptoms. These include the objective medical evidence, the claimant's daily activities, and medications or other treatments

---

[2] Physical therapy notes indicate that Hatfield had decreased lumbar range of motion and that he could not complete an FCE due to hypertension, but this does not constitute evidence from an acceptable medical source. *See* SSR 16-3p, at *3.

the claimant has received. *See* 20 C.F.R. §§ 404.1529(c); 416.929(c). Although his analysis is brief, it is clear that the ALJ did consider several of the factors in this case.

During the administrative hearing, Hatfield advised the ALJ that his activity was limited due his blood pressure and "lower back problems," which went into his groin. [Tr. 111] However, the ALJ explained that the medical record did not support these claims, as Hatfield's blood pressure was controlled with Lisinopril, and diagnostic tests revealed that his back was normal. [Tr. 88] Further, exam findings revealed normal movement and range of motion. *Id.* Importantly, the ALJ noted that there were no exam findings in the record that would support any functional limitations. *Id.*

The ALJ also observed that Hatfield's activities of daily living were inconsistent with his subjective complaints. [*See* Tr. 89.] For instance, Hatfield managed his daily routine without assistance and could perform housework, drive, and run errands on his own. [Tr. 90] Additionally, he reported having quit his last job in 2014 to relocate to another state with his spouse and, after that, was actively seeking other work. [Tr. 91, 550] When asked during the administrative hearing what problem he had completing household chores, Hatfield replied, "I just lose interest very quick." [Tr. 119] It is also noteworthy that, in Hatfield's function report (which he completed in April 2015), he did not identify any physical impairments that limited his ability to perform work-related activities. [Tr. 366-74]

The ALJ also determined that Hatfield's claims regarding the intensity, persistence, and limiting effects of his symptoms attributed to his mental impairments were not entirely consistent with the record. This determination is supported by substantial evidence. The medical records show that Hatfield's symptoms were managed and controlled by prescribed medication. Hatfield indicated that his medication was helping him. [*See* Tr. 745.] Further,

the medical records demonstrate that he was consistently oriented to person, place, and time, had fair judgment and insight, and linear thought. [*See, e.g.*, Tr. 486, 508, 512, 513, 563, 564, 615, 619, 640, 644.] And Hatfield's recent and remote memory was often intact. [*See, e.g.*, Tr. 486, 552, 557, 615, 629, 640, 719, 723.]

## IV.

Hatfield contends that substantial evidence does not support the ALJ's decision that he is not disabled. [Record No. 11-1, p. 12] He argues that the ALJ failed to take into account his "severe back problems" and "extremely high blood pressure." *Id.* at p. 13. He also contends that he had moderate limitations in his ability to interact with others, to maintain concentration, persistence, and pace, and to adapt and manage in the work setting, which the ALJ did not incorporate into the RFC. *Id.* at pp. 14-15.

But as previously explained, the record is devoid of objective evidence which indicates that Hatfield had functional limitations based on problems with his back or blood pressure. The ALJ gave significant weight to the opinion of agency consultant Diosdado Irlandez, M.D., who reviewed Hatfield's file in September 2015 and did not assess any physical limitations. [Tr. 88, 213-14]

With respect to Hatfield's mental RFC, the ALJ gave great weight to the opinions of Drs. Ross and Thompson. [Tr. 91] Accordingly, he limited Hatfield to the performance of simple instructions and tasks in object-focused settings with infrequent casual supervision, co-worker interactions, and only occasional contact with the public. [Tr. 91, 191-93, 216-18] This reflects recommendations of both Ross and Thompson who commented, in the non-narrative portions of their reports, that Hatfield had the moderate limitations as noted above. Hatfield has not provided any reasons – and the Court cannot identify any – demonstrating that

the moderate limitations assessed by Ross and Thompson are not subsumed within the RFC assigned to him.

V.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.    Plaintiff Jeffery Hatfield's motion for summary judgment [Record No. 11] is **DENIED**.

2.    Defendant Nancy A. Berryhill's motion for summary judgment [Record No. 13] is **GRANTED**.

This 11th day of July, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge